## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

EARL L. WARD,

Case No. 24-cv-3845 (LMP/DTS)

Petitioner,

v.

SHIREEN GANDHI, *Commissioner of Minn. Dept. of Human Services*; NANCY JOHNSTON, *CEO of MSOP*; and TERRY KNEISEL, *MSOP – Moose Lake, Facility Director*,

Respondents.

**ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION AND DISMISSING HABEAS PETITION**

Earl L. Ward, *pro se*.

Anne Zimmerman, **Ramsey County Attorney's Office, St. Paul, MN**, for Respondents.

In April 2022, Petitioner Earl L. Ward ("Ward") was committed to the Minnesota Sex Offender Program ("MSOP") for an indeterminate term. After his commitment was affirmed on direct appeal, Ward petitioned the Court for habeas relief pursuant to 28 U.S.C. § 2254. *See* ECF No. 12. After receiving briefing from Ward and Respondents, United States Magistrate Judge Tony N. Leung issued a Report and Recommendation ("R&R") recommending that Ward's habeas petition be dismissed because his claims are either unexhausted or procedurally defaulted. *See* ECF No. 24. Ward has objected to the R&R's conclusions, ECF No. 26,[1] so the Court reviews the conclusions in the R&R that Ward

---

[1]    Ward's objections were received eight days late, ECF No. 26, but Ward asserts that he deposited his objections in the prison mail system on May 15, 2025—the date that the

challenges de novo, Fed. R. Civ. P. 72(b)(3).  For the following reasons, Ward's objections are overruled in part and sustained in part, the R&R is adopted in part and rejected in part, and the petition is dismissed.

## FACTUAL BACKGROUND

In February 2021, Ramsey County filed a petition to commit Ward to MSOP as a Sexually Dangerous Person ("SDP") and a Sexual Psychopathic Personality ("SPP") after a series of violent sexual offenses.  *See In re Commitment of Ward*, No. A22-0887, 2022 WL 17409908, at *1–2 (Minn. Ct. App. Dec. 5, 2022), *rev. denied* (Minn. Feb. 22, 2023). As the petition proceeded in the state district court, Ward was represented by attorney Rick Mattox for all but eight days (during which time Ward was represented by a different attorney).  ECF No. 15-1 at 12.  The state district court conducted the commitment trial over seven days from June to December 2021.  *Id.* at 3.  The parties offered 77 exhibits into evidence, and testimony was taken from two examiners, two of Ward's victims, Ward's sister, and Ward himself.  *Id.* at 3–4.  During Ward's testimony, the district court judge asked Ward questions about his 1991 conviction for promotion of prostitution with juveniles and his prison phone history.  *Id.* at 234–37.

On April 28, 2022, the state district court entered a 204-page order determining that Ward was an SDP and SPP and committing Ward to MSOP for an indeterminate term.  *See*

---

objections were due, ECF No. 27 at 4.  Ward therefore asserts that the Court must apply the "prison mailbox rule" to excuse his untimely filing.  *Id.*  Without deciding whether the prison mailbox rule applies here, the Court grants Ward's motion to accept his untimely objections, as Ward demonstrated diligence in submitting his objections, and the Court discerns no prejudice to Respondents from an eight-day delay.

*id.* at 3–207.  Ward appealed his commitment to the Minnesota Court of Appeals, this time represented by attorney Daniel S. Kufus.  *See id.* at 208–43.  In Ward's brief to the Minnesota Court of Appeals, Ward raised five issues for review:

(1) Did the trial court err[] by blind reliance upon hearsay documents?

(2) Did the trial court err[] by excluding [Ward's] witnesses and evidence?

(3) Did the trial court err[] by not allowing [Ward] an examiner of his choice?

(4) Did the trial court err[] in exchanging in a full cross examination of [Ward]?

(5) Did the trial court err[] in finding by clear and convincing evidence [Ramsey County] met its burden of proof for commitment as a sexually dangerous person and sexual psychopathic personality?

*Id.* at 212.  On December 5, 2022, the Minnesota Court of Appeals affirmed Ward's commitment.  *Ward*, 2022 WL 17409908, at *9.  Ward, still represented by Kufus, then petitioned the Minnesota Supreme Court for further review.  ECF No. 15-1 at 328–36. Ward raised five issues in his petition for review:

(1) Did the trial court abuse its discretion?

(2) Was the trial court judicial [sic] biased?

(3) Was [Ward's] counsel ineffective?

(4) Can trial courts ignore the standard set forth in *Ince* by this Court on inaccurate junk science of the actuarial tests?

(5) Was qualified professional judgment exercised under *Youngberg v. Romeo*, 457 U.S. 307 (1982)?

*Id.* at 334–35 (footnote omitted).  On February 22, 2023, the Minnesota Supreme Court denied Ward's petition for review.  *Id.* at 337.  Representing himself, Ward then petitioned

the U.S. Supreme Court for a writ of certiorari.  *Id.* at 338–58.  The U.S. Supreme Court denied Ward's pro se petition on October 2, 2023.  *Id.* at 360.

Five days later, Ward filed this habeas action, *see* ECF No. 1, and later filed an amended petition, ECF No. 12.  As far as the Court can discern, Ward raises six claims in his habeas petition: (1) whether he received ineffective assistance of counsel during his commitment trial; (2) whether the state district judge presiding over the commitment trial was biased based on her questioning of Ward during his testimony; (3) whether Ward was served with legal papers during the commitment trial; (4) whether the state district court improperly relied on sealed court records; (5) whether the state district court lacked personal jurisdiction over Ward; and (6) whether the state district court lacked subject-matter jurisdiction over the commitment proceedings.  *See id.* at 5–8.

After receiving briefing from Ward and Respondents, *see* ECF Nos. 14, 17, Magistrate Judge Leung issued the R&R, ECF No. 24.  The R&R concludes that Ward's claims are either unexhausted or procedurally defaulted.  *Id.* at 8–17.  It recommends that Ward's petition be dismissed because it contains both unexhausted and exhausted claims and further recommends against issuing a certificate of appealability.  *Id.* at 17–18.

Ward filed objections to the R&R, arguing that his claims were properly exhausted and are not procedurally defaulted.  *See generally* ECF No. 26.

## ANALYSIS

Ward, as an individual in state custody, filed his petition under 28 U.S.C. § 2254 for a writ of habeas corpus.  On review of a Section 2254 petition, the question for the Court is whether his commitment violates the United States Constitution or federal law.  *See*

4

*Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009) (citing 28 U.S.C. § 2254(a)). Federal habeas relief can be granted on a claim "adjudicated on the merits in State court proceedings" only if the state court adjudication either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## I.    State-Court Exhaustion

Before a habeas claim may be considered on the merits, the claim must be exhausted in state court. *See id.* § 2254(b). The exhaustion requirement allows the state "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (citation omitted) (internal quotation marks omitted). To provide the State with the necessary "opportunity," "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

Accordingly, the petitioner must "invok[e] one complete round of the State's established appellate review process" to properly exhaust a claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Minnesota, that means that a claim must have been presented to both the Minnesota Court of Appeals and the Minnesota Supreme Court. *See Latimer v. Smith*, 351 F. Supp. 3d 1218, 1224 (D. Minn. 2018) (holding that a claim was not exhausted when it was presented to the Minnesota Court of Appeals, but not the Minnesota Supreme

Court); *Jackson v. Beltz*, No. 20-cv-1978 (PAM/KMM), 2021 WL 1795635, at *7 (D. Minn. Apr. 5, 2021) (holding that a claim was not exhausted when it was raised to the Minnesota Supreme Court, but not the Minnesota Court of Appeals), *report and recommendation adopted*, 2021 WL 1785228 (D. Minn. May 5, 2021).  Only one will not do.

As part of exhausting his claims, a petitioner must "fairly present" the "federal nature" of each claim to the state courts.  *Baldwin*, 541 U.S. at 29.  "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits."  *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999).  A petitioner sufficiently raises the "federal nature" of his claim if he points the state courts "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue."  *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005) (citation omitted).

With this framework in mind, the Court turns to analyzing whether each of Ward's six claims has been properly exhausted.

### a.    Ineffective Assistance of Trial Counsel

The Court agrees with the R&R that Ward did not exhaust his ineffective-assistance-of-trial-counsel claim in state court.  It is true that Ward raised a claim of ineffective assistance of trial counsel in his petition for review to the Minnesota Supreme Court.  *See* ECF No. 15-1 at 333–34.  But Ward did not present that claim to the Minnesota Court of Appeals.  Apart from a few passing references to Ward's dissatisfaction with his trial counsel, *id.* at 224, 228, 233, Ward presented no argument to the Minnesota Court of

Appeals that it should reverse his commitment on the basis of ineffective assistance of counsel. The passing references to Ward's dissatisfaction with his trial counsel—which did not include any citation to federal authority—did not fairly present a federal claim of ineffective assistance of trial counsel to the Minnesota Court of Appeals. *See Adams v. Robertson*, 520 U.S. 83, 89 n.3 (1997) (holding that "passing invocations" of a federal claim in state court do not satisfy the exhaustion requirement). And because Ward did not present this claim in "one complete round of the State's established appellate review process," the claim remains unexhausted. *O'Sullivan*, 526 U.S. at 845; *see Jackson*, 2021 WL 1795635, at *7.

     **b.**    **Judicial Bias**

The R&R concludes that Ward's judicial-bias claim was not exhausted. *See* ECF No. 24 at 10–11. Although the R&R observes that the claim was presented to both the Minnesota Court of Appeals and the Minnesota Supreme Court, the R&R concludes that those courts were not alerted to the federal nature of that claim because "Ward only cited Minnesota caselaw" and a single Eighth Circuit case in support of his claim. *Id.*

The Court respectfully disagrees with the R&R's conclusion. "[P]etitioners are not required to cite book and verse on the federal constitution" to satisfy the exhaustion requirement. *Carney v. Fabian*, 487 F.3d 1094, 1097 n.3 (8th Cir. 2007) (citation omitted) (internal quotation marks omitted). Rather, a petitioner sufficiently raises the "federal nature" of his claim if he points the state courts "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Cox*, 398 F.3d at 1031 (citation omitted). Ward did

7

exactly that by pointing the Minnesota Court of Appeals and the Minnesota Supreme Court to *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1190–91 (8th Cir. 1984), a case in which the Eighth Circuit examined a claim of judicial bias under the Due Process Clause of the Fifth Amendment to the U.S. Constitution. *See* ECF No. 15-1 234, 334. Additionally, the R&R does not acknowledge that in Ward's briefing to the Minnesota Court of Appeals and the Minnesota Supreme Court, Ward also cited *In re Murchison*, 349 U.S. 133, 136–37 (1955), in which the U.S. Supreme Court examined a claim of judicial bias under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *See* ECF No. 15-1 at 234, 334.

The R&R surmises that Ward's citation to *Gardiner* did not "expressly identify a federal claim for judicial bias" but "merely illustrate[d] an example of an appellate court making a determination on an issue of judicial bias." ECF No. 24 at 10–11. But *Gardiner* (and *Murchison*) made a determination on an issue of judicial bias *as a matter of federal constitutional law*. Citing these cases, therefore, was enough to fairly present the federal nature of Ward's judicial-bias claim to the state courts. *Cox*, 398 F.3d at 1031; *see Hall v. Iowa*, 705 F.2d 283, 287–88 (8th Cir. 1983) (exhaustion requirement was satisfied when during state court proceedings, petitioner cited to a single case predicated on the same federal ground as that contained in the habeas petition). The Court thus finds that Ward properly exhausted his judicial-bias claim.

### c. Lack of Subject-Matter Jurisdiction

Ward alleges that the state district court lacked subject-matter jurisdiction over Ward's commitment proceedings. ECF No. 12 at 8. Although this claim was arguably

presented to the Minnesota Supreme Court, ECF No. 15-1 at 332–33, it was never presented to the Minnesota Court of Appeals, and accordingly remains unexhausted.  *See O'Sullivan*, 526 U.S. at 845; *Jackson*, 2021 WL 1795635, at *7.

### d.  Remaining Claims

As for Ward's remaining claims that legal papers were not served on him during the commitment proceedings, sealed court records were improperly relied upon by the state district court, and the state district court did not have personal jurisdiction over him, ECF No. 12 at 6, 8, the Court agrees with the R&R that these claims are unexhausted because they were not presented to the Minnesota Court of Appeals or the Minnesota Supreme Court.  ECF No. 24 at 11; *see O'Sullivan*, 526 U.S. at 845.

In sum, the only claim that Ward has properly exhausted is his judicial-bias claim.

## II.    Procedural Default

If an unexhausted claim may still be pursued in state court, the claim remains just that: unexhausted.  In that case, the petitioner has "an opportunity to return to state court to adjudicate the claim."  *See Shinn v. Ramirez*, 596 U.S. 366, 379 (2022).  However, when "firmly established and regularly followed" state procedural rules preclude any further attempts to exhaust an unexhausted claim, that claim has been procedurally defaulted. *Johnson v. Lee*, 578 U.S. 605, 608 (2016) (per curiam) (citation omitted); *see McCall v. Benson*, 114 F.3d 754, 757–58 (8th Cir. 1997).  Nonetheless, a federal court may consider procedurally defaulted claims on the merits if the petitioner shows "cause and prejudice for the procedural default."  *Dretke v. Haley*, 541 U.S. 386, 393 (2004).

Individuals committed to MSOP may challenge their confinement in Minnesota state court through habeas proceedings, although they may only raise "constitutional and jurisdictional challenges." *See Joelson v. O'Keefe*, 594 N.W.2d 905, 908 (Minn. Ct. App. 1999). However, habeas proceedings "may not substitute for appeal or be used to collaterally attack commitment." *Id.* (citing *State ex rel. Thomas v. Rigg*, 96 N.W.2d 252, 257 (Minn. 1959)). This means that state habeas proceedings may not be used to raise a claim that a petitioner "could have raised [] in his direct appeal of his commitment." *Larson v. Jesson*, No. A10-2214, 2011 WL 2623446, at *6 (Minn. Ct. App. Jul. 5, 2011) (citing *Kelsey v. State*, 283 N.W.2d 892, 893–94 (Minn. 1979)); *see also HaKeem v. Harpstead*, No. A23-1193, 2024 WL 763629, at *2 (Minn. Ct. App. Feb. 21, 2024) (same); *Favors v. Jesson*, No. A13-1579, 2014 WL 997055, at *2 (Minn. Ct. App. Mar. 17, 2014) (same); *Gamble v. State*, No. A10-1307, 2011 WL 500115, at *3 (Minn. Ct. App. Feb. 15, 2011) (same).

Considering the case law cited above, the Court finds that Minnesota's rule that a habeas petition cannot substitute for an appeal or be used to collaterally attack the petitioner's commitment is "firmly established and regularly followed." *Johnson*, 578 U.S. at 608. And applying that rule here leads to the conclusion that all of Ward's unexhausted claims are procedurally defaulted. At the time of his direct appeal, Ward would (or should) have known that he had ineffective assistance of trial counsel, that he was not served with legal papers during the commitment proceedings, and that the state district court used sealed court records in its commitment order. The Court therefore agrees with the R&R that these claims are procedurally defaulted.

10

However, the Court disagrees with the R&R's conclusion that Ward's challenges to personal and subject-matter jurisdiction are not procedurally defaulted. The R&R concludes that Ward's personal-jurisdiction argument is not procedurally defaulted because "committed individuals may make jurisdictional challenges to the legality of their commitment in a state habeas corpus proceeding." ECF No. 24 at 14 (citing *Joelson*, 594 N.W.2d at 908). True enough, but Ward would have been aware of this argument at the conclusion of his trial at the latest, meaning he could have raised it on direct appeal. He did not, so that claim is procedurally defaulted. *See Larson*, 2011 WL 2623446, at *6.

As for subject-matter jurisdiction, the R&R held that because committed persons may raise jurisdictional challenges in a state habeas proceeding, that claim was not procedurally defaulted. ECF No. 24 at 14 (citing *Joelson* 594 N.W.2d at 908). But again, Ward would have been aware of the jurisdictional defect at the time he appealed his commitment; indeed, the argument was presented in Ward's petition for review to the Minnesota Supreme Court. *See* ECF No. 15-1 at 332–33. Because Ward did not properly present this argument on direct appeal, even though he could have, Ward is precluded from bringing this claim in a state habeas proceeding. *See Larson*, 2011 WL 2623446, at *6.

It is true, of course, that "defects in subject matter jurisdiction may be raised at any time and cannot be waived or forfeited by a party." *Rued v. Comm'r of Hum. Servs.*, 13 N.W.3d 42, 46 (Minn. 2024) (citation omitted) (internal quotation marks omitted). But that does not change the procedural-default inquiry. In *Beaulieu v. Minnesota*, a habeas petitioner who had been committed to MSOP untimely appealed his commitment, raising the state district court's lack of subject-matter jurisdiction. 583 F.3d at 573. The Minnesota

Court of Appeals dismissed the appeal as untimely, and the Minnesota Supreme Court denied further review. *Id.* The petitioner then sought habeas relief in federal court, arguing that "his subject matter jurisdiction claim [was] not subject to procedural default" because "subject matter jurisdiction is not subject to waiver." *Id.* at 574. The Eighth Circuit rejected that argument, explaining that it was "not addressing whether subject matter jurisdiction is subject to waiver before the state court," but rather "whether [the petitioner's] subject matter jurisdiction challenge to Minnesota's civil commitment action precludes a finding of procedural default for purposes of federal habeas review." *Id.* The Eighth Circuit thus held that the petitioner's claim that the state district court lacked subject-matter jurisdiction was "procedurally defaulted and unreviewable in federal court" because it was not presented "in a timely manner to the Minnesota courts." *Id.*

*Beaulieu* controls here. Ward did not present his challenge to subject-matter jurisdiction "in a timely manner to the Minnesota courts." *Id.* And pursuant to Minnesota's firmly established and regularly followed rule, Ward can no longer present this claim in a state habeas petition. *See Joelson* 594 N.W.2d at 908; *Larson*, 2011 WL 2623446, at *6. Therefore, even though subject-matter jurisdiction cannot be forfeited or waived, Ward's claim is procedurally defaulted for purposes of federal habeas review. *See Beaulieu*, 583 F.3d at 574.

In sum, all the claims in Ward's habeas petition are procedurally defaulted except for his judicial-bias claim, which was properly exhausted in the state courts and may be considered on the merits.

## III.    Next Steps

"[F]ederal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims."  *Rhines v. Weber*, 544 U.S. 269, 273 (2005).  A procedurally defaulted claim qualifies as "exhausted" for purposes of determining whether a habeas petition is mixed.  *See Akins v. Kenney*, 410 F.3d 451, 456 n.1 (8th Cir. 2005).

Because the R&R found that Ward's habeas petition presented unexhausted and exhausted claims, it concluded that Ward's petition was "mixed" and recommended dismissal on that basis.  ECF No. 24 at 16–17.  But the Court has concluded that all of the claims in Ward's petition are exhausted—either because they are procedurally defaulted or properly exhausted in the state courts.  The Court will, therefore, adjudicate Ward's habeas petition in light of its holdings above.

## IV.    Judicial-Bias Claim

The Court's review of the merits of Ward's judicial-bias claim is circumscribed.  The question is not whether Ward is correct on the merits; rather, the Court must determine whether the state court's adjudication either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  This standard of review affords "substantial deference" to the state court's judgment.  *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Finally, a state court decision involves "an unreasonable determination of the facts in light of the evidence presented in state court proceedings" only if "it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004).

Ward's judicial-bias claim implicates the due process protections of the Fourteenth Amendment. "A fair trial in a fair tribunal is a basic requirement of due process." *Murchison*, 349 U.S. at 136. The U.S. Supreme Court has recognized core types of judicial bias: (1) when a judge has a pecuniary interest in the outcome of a case, and (2) when "procedural infirmities" preclude the possibility of a disinterested presiding judge. *See Jones*, 359 F.3d at 1013 (reviewing Supreme Court precedent). However, judicial proceedings also must not become infected by either "actual bias" or "the appearance of bias." *Id.* at 1012. To that end, judicial bias may still exist where, "realistically considering psychological tendencies and human weaknesses, the judge would be unable to hold the proper balance between the state and the accused." *Id.* at 1013 (citation omitted). This test does not require judges to be held to a "superhuman standard that would allow no

14

expressions of emotion," and "presume[s] the ability of judges to rule impartially notwithstanding personal attacks and challenges to their authority." *Id.*

Before the state appellate courts, Ward argued that the state district judge presiding over his commitment trial demonstrated bias against him by asking him questions about his 1991 conviction for promotion of prostitution with juveniles and his prison phone history. ECF No. 15-1 at 234–37. Ward also argued that during her questioning of him, the state district judge suggested that Ward was not credible when testifying about what he could remember. *Id.* at 236.

The Minnesota Court of Appeals rejected Ward's claim of judicial bias. The court correctly identified the governing standard for claims of judicial bias. *See Ward*, 2022 WL 17409908, at *6. The court then held that the state district judge's questioning of Ward did not amount to judicial bias, given that a district court judge "may interrogate witnesses, whether called by itself or by a party." *Id.* (quoting Minn. R. Evid. 614(b)). The court further explained that "[e]ven if the isolated comment questioning Ward's ability to recall certain events could be construed as argumentative," it concluded that the comment did not demonstrate judicial bias, "particularly in the context of the entirety of the lengthy, multi-day court trial." *Id.* The appellate court further observed that the state district judge stated that she was interested in hearing Ward's "side of the story," despite Ward's "repeated interruptions of proceedings." *Id.*

The Court discerns no error in the decision of the Minnesota Court of Appeals, let alone an error that would warrant departing from the "substantial deference" owed to the state court's judgment. *See Williams*, 695 F.3d at 831. Ward's allegations of judicial bias

do not implicate a core type of judicial bias, such as a judge's pecuniary interest in a case or a structural, procedural infirmity. *Jones*, 359 F.3d at 1013. Rather, his claim "relate[s] to alleged personal animosity [between the state district judge and Ward] and instances of stern courtroom administration." *Id.* In those types of cases, the Eighth Circuit has affirmed that state courts have "considerable latitude to pronounce rulings that do not contradict, and are reasonable applications of" U.S. Supreme Court precedent, given that the standard for judicial bias is "inherently vague." *Id.* at 1012–13.

The Minnesota Court of Appeals rightly concluded that judicial bias did not arise from the bare fact that the state district judge questioned Ward about his 1991 conviction for promotion of prostitution with juveniles and his prison phone history. *See Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104, 1111 (8th Cir. 1988) (rejecting claim of judicial bias based on judge's questioning of witnesses because the judge did not "assume the role of advocate" and asked questions "to clarify factual issues"). The transcript of the commitment proceedings does not reflect that the state district judge presiding over Ward's commitment trial assumed the role of an advocate.[2] Rather, it appears that the state district judge questioned Ward to clarify the evidence and Ward's testimony about whether he believed he had engaged in harmful sexual conduct. *See* ECF No. 30-5 at 93–113 (asking Ward for his definition of harmful sexual conduct and asking: "Do you believe [your

---

[2]    Upon determining that Ward's judicial-bias claim was properly exhausted, the Court directed Respondents to file the transcript of Ward's commitment proceedings so that the Court could independently review the entirety of the questioning by the state district judge that Ward challenges.

conduct] constitutes harmful sexual conduct?").  The state district judge was entitled to do so.  *See* Minn. R. Evid. 614(b); *Lewy*, 836 F.2d at 1111.

As for the single comment that purportedly demonstrates the state district judge's belief that Ward was not credible when testifying about what he could remember, that comment falls far short of demonstrating judicial bias.  In response to Ward's testimony that he could not remember someone's identity, the state district judge replied, "I do think you can remember that."  ECF No. 30-5 at 109–10.  Assuming this statement represented commentary on Ward's credibility, the Court agrees with the Minnesota Court of Appeals that this single, stray comment during the span of a multi-day commitment trial does not rise to the level of unconstitutional judicial bias.  *Ward*, 2022 WL 17409908, at *6; *see Lewy*, 836 F.2d at 1111 (finding no unconstitutional judicial bias when the judge's questioning of witnesses was "not extensive"); *United States v. Jackson*, 696 F.2d 578, 594 (8th Cir. 1982) (finding no unconstitutional judicial bias when there was no indication that the judge's "very limited involvement in the presentation of evidence" compromised his impartiality); *Jones*, 359 F.3d at 1014 (quoting *Offutt v. United States*, 348 U.S. 11, 17 (1954) (explaining that a "rare flareup" by a judge does not demonstrate unconstitutional judicial bias).

At base, the Minnesota Court of Appeals did not "make an unreasonable determination of the facts in light of the evidence presented in state court proceedings," nor did it apply "clearly established Federal law, as determined by the Supreme Court of the United States" unreasonably or in a manner contrary to that clearly established law.  28 U.S.C. § 2254(d).  Ward is therefore not entitled to habeas relief on his judicial-bias claim.

## V.     Procedurally Defaulted Claims

As the Court previously held, the remainder of Ward's claims are procedurally defaulted.  For the Court to consider those claims on the merits, therefore, Ward must show "cause and prejudice" to excuse his procedurally defaulted claims.  *Dretke*, 541 U.S. at 393.

Liberally construing Ward's petition and filings, the Court understands Ward to argue that he received ineffective assistance of appellate counsel because his attorney on direct appeal failed to raise the procedurally defaulted claims.  *See* ECF No. 17 at 5–6; ECF No. 26 at 6.  Ineffective assistance of appellate counsel may constitute cause excusing a procedural default.  *See Williams v. Kemna*, 311 F.3d 895, 897 (8th Cir. 2002).  However, "in order to urge ineffective assistance as cause excusing a procedural default, the federal habeas petitioner must have properly raised the ineffectiveness claim in state court."  *Id.*; *see Murray v. Carrier*, 477 U.S. 478, 489 (1986) (explaining that the exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default"); *Lynch v. Miles*, No. 17-cv-1917 (DWF/TNL), 2018 WL 1383838, at *1–2,  (D. Minn. Mar. 19, 2018) (holding that ineffective assistance of appellate counsel could not constitute cause for procedurally defaulted claims because petitioner had not first presented that argument in Minnesota state court).

There is no evidence in the record that Ward has ever presented his claim of ineffective assistance of appellate counsel to the Minnesota state courts.  Accordingly, Ward cannot use the purported ineffective assistance of his appellate counsel as cause to overcome his procedurally defaulted claims.  *Williams*, 311 F.3d at 897.

Ward's amended petition also suggests that failing to address the procedurally defaulted claims would result in a "miscarriage of justice." ECF No. 12 at 11. Procedural default may be excused if "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (2000). But to invoke the "fundamental miscarriage of justice" exception, Ward would need to show his actual innocence by a preponderance of the evidence.[3] *See Thomas v. Payne*, 960 F.3d 465, 473 (8th Cir. 2020). Based on a thorough review of the record, the Court does not believe that Ward has met that formidable burden. And seeing no other basis to excuse Ward's procedural default, the Court will dismiss the remaining claims in the petition.

Ward also filed a "Motion to Hold Proceedings in Abeyance for Petition for Writ of Habeas Corpus Pending Jurisdiction." *See generally* ECF No. 21. Ward requests that this Court stay this habeas proceeding and refer the case to the Ramsey County District Court for the state district court to determine whether the state court had jurisdiction over his

---

[3]    It appears that the "fundamental miscarriage of justice" exception largely bleeds into the "actual innocence" exception to procedural default. *See Thomas*, 960 F.3d at 473; *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (referring to the "miscarriage of justice" and "actual innocence" exceptions interchangeably). The Eighth Circuit has concluded that habeas petitioners who are civilly committed (like those committed to MSOP) cannot invoke the "actual innocence" exception to the one-year statute of limitations for bringing a habeas petition. *See Rick v. Harpstead*, 110 F.4th 1055, 1061 (8th Cir. 2024). Although the Eighth Circuit has not squarely considered whether MSOP petitioners can invoke the "actual innocence" exception for purposes of excusing procedural default (as opposed to untimeliness), the reasoning of *Rick* would seem to preclude Ward from doing so. The Court need not wade into that thorny issue, however, because assuming the "miscarriage of justice" exception to procedural default exists in the civil commitment context, Ward falls woefully short of demonstrating his entitlement to that exception.

commitment proceedings petition. *See id.* Because the Court dismisses the petition, however, it denies the motion for a stay as moot.

## VI.    Certificate of Appealability

Ward objects to the R&R's recommendation that the Court deny a certificate of appealability. ECF No. 26 at 10–12. A petitioner seeking habeas relief pursuant to Section 2254 may not appeal an adverse ruling on his petition unless he is granted a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a court dismisses a habeas petition on procedural grounds, the petition must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court recognizes that it disagreed with the R&R's conclusion that Ward's jurisdictional claims remain unexhausted.[4] Therefore, although the Court is firmly convinced that these claims are procedurally defaulted, the Court agrees that jurists of reason may find it debatable whether Ward's jurisdictional challenges to the commitment proceedings are procedurally defaulted. The Court will therefore grant Ward a certificate of appealability to pursue that specific issue. Ward will not, however, be granted a

---

[4]    The Court also disagreed with the R&R's conclusion that Ward had not properly exhausted his judicial-bias claim. However, the Court decided that issue in Ward's favor, so that claim would not provide a basis on which Ward would likely appeal.

certificate of appealability for any other claim or issue, as jurists of reason could not debatably find the balance of Ward's claims meritorious.

**CONCLUSION**

Based upon all the files, records, and proceedings in the above-captioned matter, **IT IS HEREBY ORDERED THAT**:

1. Ward's Motion to Accept Untimely Objections (ECF No. 27) is **GRANTED**;

2. Ward's Motion to Hold Proceedings in Abeyance for Petition for Writ of Habeas Corpus Pending Jurisdiction (ECF No. 21) is **DENIED AS MOOT**;

3. Ward's objections (ECF No. 26) are **OVERRULED IN PART** and **SUSTAINED IN PART**;

4. The Report and Recommendation (ECF No. 24) is **ADOPTED IN PART** and **REJECTED IN PART**;

5. The Amended Petition (ECF No. 12) is **DISMISSED WITHOUT PREJUDICE;** and

6. Ward's request for a certificate of appealability is **GRANTED** with respect to the single issue of whether Ward's challenges to the personal jurisdiction and subject-matter jurisdiction of the state district court are procedurally defaulted.  In all other respects, Ward's request for a certificate of appealability is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 25, 2025                           *s/Laura M. Provinzino*
                                               Laura M. Provinzino
                                               United States District Judge